IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHARLES MICHAEL GOSS, JR., | ) | |
|     Plaintiff, | ) | Civil Action No. 7:21-cv-00081 |
| | ) | |
| v. | ) | |
| | ) | |
| JACKIE BIRD, *et al.*, | ) | By: Michael F. Urbanski |
|     Defendants. | ) | Chief United States District Judge |

## MEMORANDUM OPINION AND ORDER

Charles Michael Goss, Jr., an inmate housed at the Patrick County Jail ("the Jail") and proceeding pro se, filed this civil rights case under 42 U.S.C. § 1983. His complaint is still only conditionally filed, but Goss filed a motion, ECF No. 19, which the court has construed as a motion for preliminary injunction "requiring [Jail] staff to provide him timely opportunities to go to the bathroom through self-catheterization." ECF No. 20 at 3. The court directed that the motion and several prior letters Goss sent to the court be served upon Sheriff Smith, and directed Sheriff Smith to respond to the motion for preliminary injunction. A response has now been filed, which includes written testimony from Sara Thompson, a registered nurse at the Jail. ECF No. 26. For the reasons discussed herein, Goss's motion will be denied.

### I.    BACKGROUND

Goss's initial complaint alleged that his constitutional rights were violated by unidentified Jail personnel when they failed to timely provide him with a catheter, which he needs to empty his bladder, on three occasions in January 2021. ECF No. 1. The complaint was conditionally filed, but the complaint named the Jail as the only defendant. Thus, the court issued an order noting that the Jail was not a proper defendant and directing Goss to file an amended complaint naming other defendants and identifying how each defendant violated his rights.

Goss filed his amended complaint and named five individuals as defendants, but that amended complaint did not identify any particular action or inaction by any of the named defendants. It again repeated his allegations about the three January dates. He also alleged that he was supposed to be moved to a medical cell on February 17, 2021, so that he could use the bathroom when needed, but instead "they" moved him to a segregation cell. ECF No. 17 at 1–2. Because his amended complaint again failed to identify any particular action by any named defendant, Goss was directed to file a second amended complaint and was recently granted an extension of time to do so.

Throughout the pendency of the case, Goss has sent to the court a number of brief letters complaining about other incidents or events. These include complaints about other dates and times when he alleges he was not timely given a catheter, including one as recently as March 4, 2021. He further alleged that he had been required to use the same catheter over a few times and doing so could cause an infection in his bladder or kidney. He stated that he had already "had some infection because of that." ECF No. 16.

Sherriff Smith's response provides additional background information and significant detail about Goss's medical treatment at the Jail. Dkt. No. 26. It also includes information about two instances in which security staff at the Jail discovered a catheter being used as a tattoo gun, which is considered contraband and presents a serious health risk to the inmates. As to the first incident, Jail personnel could not determine for certain that the catheter was one that had been dispensed to Goss, but he was the only inmate at that time that required a catheter to urinate. Thompson Decl. ¶ 15, ECF No. 26-1.

In the second incident, which occurred on February 17, 2021, the tattoo gun fashioned from a used catheter was found in a cell Goss shared with another inmate on the same day that

he was removed from that cell and taken to a medical cell. Id. ¶ 29. Goss was aggressive and belligerent when staff tried to move him to the medical pod, and even threw a book at staff. Once there, he threw his belongings and covered up the surveillance camera mounted in his cell. At that time, medical personnel had been alerted that Goss might have an acute Hepatitis A infection, and he was going to require retesting.[1] Particularly in conjunction with the possibility that Goss's catheter had been used as a tattoo gun, the possibility of such an infection posed a serious risk to other inmates.

Later that same day, the decision was made to transfer Goss to a segregation pod. This was done both so that he could be more closely monitored by staff for his catheterization and so that other inmates could be protected from the risk of a possible Hepatitis A infection from any catheter obtained from Goss. Id. ¶¶ 30–32.

Nurse Thompson also explains that, in late January, staff began to keep a log of catheters dispensed to Goss. Id. ¶ 24; Log, ECF No. 26-2. Importantly, although Goss was dispensed at least four catheters a day between January 29, 2021, and March 19, 2021, his requests subsequently diminished down to three requests a day, then two, then one. Nurse Thompson avers that Goss was last dispensed a catheter on March 24, 2021, at 8:43 a.m. Id. ¶ 43; Log at 2.

Since that date, Goss has not required a catheter to urinate; he has not complained of, or requested to be seen by any Jail medical staff or outside provider for issues with urinary retention; and no more tattoo guns fashioned from catheters have been discovered by Jail security staff.

---

[1] Goss has submitted copies of his test results, collected on February 5, 2021, and reported on February 13, 2021, which he misreads. ECF No. 8-1. Although he claims the results were negative, they in fact reflect a "positive" result and specifically state that the results are "consistent with active infection." Id.

3

Thompson Decl. ¶ 43. Notably, moreover, although Goss has sent letters to the court since that time, none have complained of being denied a catheter after March 24, 2021.

On March 25, 2021, Goss's Hepatitis A re-test was reported as negative. At that point, it was determined that he could be safely housed in general population, and he was moved to a general population cell that evening. Id. ¶¶ 44–45. Nurse Thompson also avers that Goss was never diagnosed with a bladder infection by any Jail medical staff or outside medical provider since arriving at the Jail on October 7, 2020. Id. ¶ 47.

Goss also offers wholly conclusory allegations about suffering from "a lack of and poor health services," ECF No. 19, and "not getting the proper medical treatment," ECF No. 27. Aside from the catheter-related incidents, though, he does not offer any specifics about what medical condition or symptoms he is experiencing or what care he believes he is being denied. Furthermore, the medical records and affidavit of Nurse Thompson reflect that Goss has received a significant amount of outside medical treatment during his time at the Jail, as well as received treatment from Jail personnel for a variety of complaints. See generally Thompson Decl.

In other letters, Goss (1) again offers vague complaints—without any specific details—about his "not being treated fairly because of the law suit," (2) references being placed "in the hole," (i.e., segregation); (3) complains that Jail officers have called him names (a "needy mother f**ker" and a "smartass"; and (4) repeatedly asks to be moved to a Department of Corrections prison. ECF Nos. 6–8, 12, 14, 16, 19.

## II.  DISCUSSION

Preliminary injunctive relief is an "extraordinary" remedy that courts should grant only "sparingly." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991). The party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on

4

the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 22 (2008); League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 249 (4th Cir. 2014). The remedy may be granted only on a "clear showing" of entitlement to relief. Winter, 555 U.S. at 22. Critically, the movant must satisfy all four requirements to obtain preliminary injunctive relief. Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 345–46 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010).

Upon review of the record, the court concludes that Goss has not met the standard for obtaining preliminary injunctive relief. It is unnecessary to evaluate all of the Winter factors because it is plain that he has not set forth sufficient evidence to establish the second one, which requires him to show that, without the court's intervention, he is likely to suffer harm that is "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd., 952 F.2d at 812.

Most importantly, the sworn testimony and records before the court reflect that Goss is no longer requiring a catheter to urinate, and he has not presented anything to refute that evidence. Accordingly, he cannot show that he is likely to suffer any harm in the absence of an order directing staff to timely provide him with catheters. Likewise, to the extent his motion can be construed as requesting "proper medical treatment," he has not presented any specific complaints (other than the issues with the catheters) about a lack of medical care, and the medical records reflect that he has received care during his time at the Jail, both from Jail and outside medical providers.

Lastly, to the extent his motion for preliminary injunction requests a transfer to VDOC custody, the court sees no basis for granting that relief. First of all, a prisoner has no

5

constitutional right to be housed in any particular facility. Meachum v. Fano, 42 U.S. 215, 224 (1976). Relatedly, the decision about where to house any particular inmate is generally committed to the discretion of the state's prison officials, and a federal court must show deference to such decisions. Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir. 1980). Thus, an order requiring a transfer to any specific facility is not appropriate, especially in light of his failure to provide detail as to any specific, likely future harm.

III.   CONCLUSION AND ORDER

For all of foregoing reasons, Goss's motion, ECF No. 19, is **DENIED**. The Clerk shall send a copy of this memorandum opinion and order to Goss and to counsel for Sheriff Smith.

It is so **ORDERED**.

Entered:  July 6, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.07.06 10:38:10
-04'00'

Michael F. Urbanski
Chief United States District Judge